# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )<br>            )<br>     Plaintiff,  )<br>            )<br>v.          )<br>            )<br>Jose Luis Lorta-Arvizu,  )<br>            )<br>     Defendant.  )<br>_____) | No. CR 06-343 TUC FRZ (JM)<br><br>**REPORT AND RECOMMENDATION** |

This matter was referred to Magistrate Judge Marshall for all pretrial matters. On September 19, 2006, Defendant Jose Luis Lorta-Arvizu filed Pre-Trial Motions [Docket No. 25], which included a motion to suppress evidence.[1] The motion to suppress was heard by Magistrate Judge Marshall on October 16, 2006. The Defendant was present at the hearing and was represented by counsel. The testimony of two witnesses was presented by the Government: Border Patrol Agents Jose Dominguez and Manuel Barron. The witnesses were examined, cross-examined, and questioned by the Court. Having considered the matter, the Magistrate Judge submits the following Findings of Fact and Conclusions of Law and recommends that Defendant Lorta-Arvizu's Motion be denied.

---

[1] Three discovery motions were also included in the Defendant's Pre-Trial Motions and were resolved at the close of the hearing. (TR at 101).

## I. FINDINGS OF FACT

On January 18, 2006, Agent Dominguez was patrolling the San Rafael Valley near Lochiel, Arizona, which is located about 45 minutes east of Nogales, Arizona, which is the nearest legal port of entry from Mexico into the United States. (TR at 7 & 72).[2] The area is mountainous and rural, is lightly populated by ranchers and sees occasional tourist traffic. (TR 7-8, 35 & 72-73). The area is frequented by alien and drug smuggling traffic coming from Mexico. (TR 9-10, 37 & 73-74).

After patrolling the area for several hours, the agents received radio notification from Tucson that a magnetic sensor had been activated indicating that a vehicle had driven across the international border near Lochiel, Arizona. (TR 12-13, 41 & 75; Exhibit 101 (map of area)). Agent Dominguez testified that he did not remember precisely when the notification occurred, but estimated that the vehicle stop took place at approximately 2:50 p.m. (TR 13-14, 16 & 25). He based his estimation on the time reflected on the ticket generated by the Tucson Border Patrol Office that documented the incident. (TR 15). Agent Barron testified, and the record of the radio transmissions reflects, that the initial report of sensor activation occurred just before 2:31 p.m.[3] (TR 82 & Exhibit 4). In the radio transmission, the dispatcher called out "10-60," which indicated a sensor activation, and "979," which

---

[2] "TR" refers to the Transcript of Motion Hearing dated September 19, 2006, and filed with the Clerk on September 21, 2006. *Docket No. 47*.

[3] A copy of the radio transmission was submitted on compact disc and admitted into evidence during the hearing. (*See* Exhibit 4). The computer files containing the transmissions are identified in military time according to the time each transmission occurred. The first report of sensor activation is identified as 143057, or 2:30:57 p.m. (*Id.*). A transcript of the computer files was submitted with the Defendant's motion and submitted at the hearing. (*See Defendant's Pre-Trial Motions*, Attachment 1 and Exhibit 102). The Magistrate Judge has compared the recording and the transcript and found the transcript not to be entirely accurate. For example, the first entry on the transcript of the recording reads "10-50," which should be "10-60," and "Ford 2," instead of "Port 2." (TR 55). The Magistrate Judge has therefore not relied on the transcript in reaching her conclusions herein.

1  indicated the general location of the activation, and "1 times 1," which indicated how many
2  hits or activations occurred. (TR 55-56 & 74).

3        After receiving notification of the sensor activation, Agent Dominguez testified that
4  he and Agent Barron, who were both in separate marked vehicles, positioned themselves
5  approximately five miles north of the activation point in an attempt to intercept the vehicle
6  that had activated the sensors. (TR 16 & 39). About five or ten minutes after receiving
7  notice of the sensor activation (according to Agent Dominguez) or about ten or fifteen
8  minutes (according to Agent Barron), the agents observed a flatbed Nissan truck with Mexico
9  license plates traveling on Forest Service Road 61 from the direction of Lochiel and the
10 border. (TR 17-19, 41 & 75-76). The agents allowed the truck to pass, and then initiated a
11 vehicle stop. (TR 19). The record of the radio transmissions reflects that the stop occurred
12 just after 2:50 p.m. *See* Exhibit 4. After stopping the vehicle, Agent Dominguez approached
13 to interview the driver and smelled marijuana. (TR 46-47).

14       Approximately five or ten minutes after the stop was made, an ATV approached the
15 area. (TR 48-49 & 78). The agents speculated that the ATV driver might also be involved
16 in the incident and determined that the ATV was stolen. (TR 50-51). Agent Dominguez
17 speculated that the ATV driver might be traveling with Lorta-Arvizu and also indicated that
18 the ATV would have triggered the border sensors if he had crossed the border near them.
19 (TR 51).

20 **II.**    **CONCLUSIONS OF LAW**
21     **A.**    **Legality of the Stop**

22       Lorta-Arvizu moves to suppress the evidence seized following the stop of the vehicle
23 he was driving, alleging that reasonable suspicion that would support the stop did not exist.
24 The Fourth Amendment protects the right of the people to be secure in their person, houses,
25 papers, and effects against unreasonable searches and seizures. *U.S. v. Hensley*, 469 U.S.
26 221, 226 (1985). In *Terry v. Ohio*, 392 U.S. 1, 88 (1968), the Supreme Court held that,
27 consistent with the Fourth Amendment, police may stop persons in the absence of probable
28

cause under limited circumstances. The Court has held that law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *Hensley*, 469 U.S. at 226.

Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). In relation to border stops, the Supreme Court has identified a number of factors to be taken into account when deciding whether a border protection officer has reasonable suspicion to stop and interrogate an individual. They include: (1) the characteristics of the area and its proximity to the border; (2) usual patterns of traffic in the area; (3) previous experience with alien traffic; and (4) information about recent illegal border crossings in the area. *U.S. v. Brignoni-Ponce,* 422 U.S. 873, 884-85 (1975). "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling. *Id.* at 885 (citing *Terry,* 392 U.S. at 27). The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1445 (9th Cir. 1994).

Here, the agents' stop of Lorta-Arvizu's vehicle was supported by reasonable suspicion. Lorta-Arvizu's argument that it was not is based largely on the contention that the agents stopped his vehicle prior to receiving notification of the border sensor activation and based on the apparent inconsistency between the time of the stop as reflected in the radio transmissions (2:31 for the sensor activation and 2:50 p.m. for the stop) and in Agent Dominguez's testimony (2:50 for the activation and 2:57 p.m. for the stop). To find support for Lorta-Arvizu's position, the Court would have to find that the activation occurred at 2:50, as reported by Agent Dominguez, and that the stop also occurred at 2:50, as reflected in the

4

radio transmission records. This interpretation of the evidence commingles two independent time sources, the ticket and the radio transmission time stamps, and therefore leads to an unreliable conclusion. As the Government suggests, while the times reflected in either the report or the radio transmissions must be incorrect, the order of events is consistent.

Lorta-Arvizu also points out that the sensor activation may have been triggered by the ATV rather than his vehicle. This appears unlikely given that additional sensor activations were reported at approximately 2:53:04 p.m. (identified as file 145304 on Exhibit 4), which was about four minutes before the ATV was reported (at file 145648 on Exhibit 4). Nevertheless, even if the scenario is as Lorta-Arvizu suggests, the fact that the sensors were activated in a border area that experiences very little traffic provided agents with a reasonable basis for concluding that Lorta-Arvizu's vehicle, which was the only vehicle they had seen until the arrival of the ATV, caused the initial sensor activation.

Next, Lorta-Arvizu contends that even if the sensor activity was reported prior to the stop, Ninth Circuit authority supporting the stop based on the sensor activity alone is outdated and undermined by subsequent rulings from other circuits. *Compare United States v. Laird*, 511 F.2d 1039 (9th Cir. 1975) (holding that the signal from the sensor while the defendant's vehicle was near the border by itself could give rise to founded suspicion sufficient for a stop) *and United States v. Mora-Chavez*, 496 F.2d 1181, 1182 (9th Cir. 1974) (same) *with Untied States v. Inocencio*, 40 F.3d 716, 723 (5th Cir. 1994) ("A sensor hit alone does not create reasonable suspicion for an immigration stop."). Given that no authority in the Ninth Circuit expressly undermines the holdings in *Laird* and *Mora-Chavez*, this argument is not compelling. Moreover, even if the validity of this authority could be questioned, the Magistrate Judge finds that the agents identified several other factors which, under the factors outlined in *Brignoni-Ponce*, support a finding of reasonable suspicion independent of the sensor activation. The vehicle in question was traveling on a rural dirt road from the direction of Mexico. Agent Dominguez indicated that, given his direction of travel, Lorta-Arvizu could not have been traveling from Nogales, Sonoita or Patagonia,

Arizona, and that he could have only been traveling from Mexico or, if he had been driven a long way on rugged roads manned by other agents, from Naco. (TR 61). The vehicle was a flatbed truck, a type of vehicle rarely seen in the area and known by agents to have been used by drug smugglers who build in hidden compartments to hide contraband. (TR 77-78). The vehicle also was licensed in Mexico and had Mexican license plates. Local residents and tourists do not have Mexican plates. (TR 62). These factors provided the agents with the requisite reasonable suspicion to stop the vehicle.

## III. RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule – Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant Jose Luis Lorta-Arvizu's Motion to Suppress Evidence [Docket No. 25].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CR 06-343-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 2nd day of November, 2006.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge